# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:12-CV-00797-FDW

| | |
|---|---|
| MONTGOMERY MUTUAL INSURANCE COMPANY AND PEERLESS INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> CITADEL MANAGEMENT, LLC, d/b/a/ CITADEL MANAGEMENT FUNERAL SERVICES, LLC; FOREST LAWN FUNERAL HOME, INC.; WILLIAM W. GAFFNEY, JR.; JOHN A LINDSEY III; JOHN A. LINDSEY; DAVID SAWYER; and SADIE SAWYER MITCHELL; <br><br> Defendants. | ORDER |

**THIS MATTER** is before the Court on Defendants' motion for partial judgment on the pleadings and motion to either stay or dismiss. (Doc. No. 26). Plaintiffs have also moved for judgment on the pleadings. (Doc. No. 28). For the reasons that follow, Defendants' motion for partial judgment on the pleadings is GRANTED in part and DENIED in part. Defendants' motion to stay is GRANTED. Plaintiffs' motion for judgment on the pleadings is DENIED.

## I. BACKGROUND

Some of Defendants in the case at bar – Jim Sawyer, Birma Sawyer, and Sadie Sawyer Mitchell (collectively, "Underlying Plaintiffs") – filed a complaint in Buncombe County Superior Court on November 28, 2009 ("Underlying Complaint").[1] The Underlying Complaint asserts several causes of action arising out of the burial practices at Forest Lawn Cemetery in

---
[1] The state court case as a whole is hereinafter referred to as the "Underlying Action."

Candler, North Carolina. Generally, the Underlying Plaintiffs allege that some of the other Defendants in the instant case – Citadel Management, LLC, d/b/a Citadel Management Funeral Services, LLC, and Forest Lawn Funeral Home, Inc., (collectively, Citadel Defendants")[2] desecrated, mishandled, and abused the body of one relative and disturbed the gravesites of three deceased relatives, causing injury to the Underlying Plaintiffs. The Underlying Complaint asserts twelve causes of action, four of which are specifically grounded in negligence: Count Two (Intentional or Negligent Mutilation of a Body); Count Three (Negligence Per Se); Count Four (Negligence); and Count Five (Negligent Infliction of Emotional Distress). (Doc. No. 10-1). The Underlying Action has not been set for trial.

Plaintiff Montgomery Mutual Insurance Company issued an insurance policy to Defendant Citadel Management LLC. The policy covers the Citadel Defendants, including the Forest Lawn entities, during the relative time period the alleged misconduct in the Underlying Complaint occurred. The policy includes coverage for "bodily injury" and "property damage" caused by an "occurrence." (Doc. No. 1-3, p. 24). Coverage also included the duty to defend any suit seeking such damages. Id. The policy defines "bodily injury" to include "mental anguish sustained by a person." (Doc. No. 1-4, p. 23). "Property damage" is defined as "physical injury to tangible property, including all resulting loss of the use of that property" as well as "loss of use of tangible property that is not physically injured." (Doc. No. 1-3, p. 39). "Occurrence" is defined as an "accident." Id.

The policy excludes coverage for "bodily injury or property damage expected or intended from the standpoint of the insured." (Doc. No. 1-3, p. 26). The policy also excludes any "injury or damage arising out of dishonest or fraudulent acts or omissions or willful violation of any

---

[2] The Citadel Defendants are related to the remaining Defendants in the instant case -- Citadel Management, LLC, Forest Lawn, Memorial Park, LLC, Forest Lawn Funeral Home, Inc., as well as various individual members of said companies. Doc. No. 10-1.

statute, ordinance or regulation committed by or with the insured's consent." (Doc. No. 1-5, p. 24).

Plaintiff Peerless Insurance Company provides commercial umbrella liability coverage to the Citadel Defendants. (Doc. No. 1-6). The policy provisions governing coverage and exclusions are materially similar to those in the Montgomery policy. (See Doc. No. 1-6, p. 19). The Peerless policy does not impose a duty to defend so long as Montgomery is providing a defense.

On December 22, 2009, Montgomery wrote to Citadel acknowledging receipt of the Underlying Complaint. (Doc. No. 10-2, p. 1). The letter provided that Montgomery "has assigned this case to defense attorney Greg York and Mr. York will defend all defendants against all allegations and counts included in the complaint." Id. The letter also stated that "there are counts included in the Complaint which are not covered by the terms of [the] insurance policy and this letter will serve to give… notice that [Montgomery is] defending all defendants on those counts under a Reservation of Rights." (Doc. No. 10-2, p. 2). The letter went on to acknowledge that

> Under the above-quoted terms, there is coverage, including a duty to defend and to pay any settlement or judgment on behalf of the defendants, for Counts I, II (negligent mutilation), III, IV, V and XIII of the complaint. Each of those counts alleges an 'occurrence' resulting in 'bodily injury,' 'property damage,' or other injury.

(Doc. No. 10-2, p. 4). As to the other counts, Montgomery specifically reserved its right to deny indemnity payments. The letter also provided:

> Please be advised that Montgomery Insurance is not waiving any policy defense which may now exist or which may become known later under this policy. It should be understood that Montgomery Insurance will continue to reserve all rights and defenses under all the terms, conditions, exclusions, insuring agreements, and provisions of the policy. This is irrespective of whether or not they have been specifically referred to in this letter.

Id. Montgomery defended the underlying action for the next three years.

On December 3, 2012, Plaintiffs Montgomery and Peerless filed a complaint seeking a declaratory judgment. (Doc. No. 1). Plaintiffs allege that they have no duty to defend or indemnify Defendants in connection with the Underlying Action. Defendants filed an answer and counterclaim on February 1, 2013. (Doc. No. 10). The counterclaim seeks a declaration that the Insurers have a duty to continue to defend the underlying action and requests the Court to either stay or dismiss without prejudice the Insurers' claim as to the duty to indemnify. Id. Both parties have moved for judgment on the pleadings as to the issue of a duty to defend, and Plaintiffs also seek judgment on the pleadings on the indemnification issue.

## II. STANDARD OF REVIEW FOR RULE 12(c) MOTIONS

"Federal Rule of Civil Procedure 12(c) provides that, '[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.' A motion for judgment on the pleadings is treated under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Marx Indus., Inc. v. Baseline Licensing Grp., LLC, 2010 WL 4790169 at *1 (W.D.N.C. Nov. 18, 2010) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir.1999)). In ruling on a motion for judgment on the pleadings, the Court may "consider documents incorporated by reference in the pleadings." Id. (quoting Farmer v. Wilson Hous. Auth., 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004)). Furthermore, judgment on the pleadings is only appropriate when, after taking all of the non-moving party's factual allegations as true and drawing all reasonable inferences in its favor, the movant demonstrates that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. Id.

## III. DISCUSSION

### A. Plaintiffs' Duty to Defend Defendants in the Underlying Action

The Court first turns to the issue of Plaintiffs' duty to defend. The parties agree Plaintiffs' duty to defend is ripe for determination at this stage, and the parties also agree that North Carolina law governs this dispute. In determining whether an insurer has a duty to defend, North Carolina courts apply the "comparison test," whereby the Court reads the insurance policies and the complaint "side-by-side to determine whether the events as alleged are covered or excluded." Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 692 S.E.2d 605, 610 (N.C. 2010) (quotation omitted). In performing this test, "the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend." Id. Where a complaint alleges multiple claims, some of which are covered and some of which are not, an insurer is obligated to defend its insured against all claims made in the lawsuit. Bruce-Terminix Co. v. Zurich Ins. Co., 504 S.E.2d 574, 578 (N.C. App. 1998). Any doubt as to coverage must be resolved in favor of the insured. Bruce-Terminix Co., 504 S.E.2d at 578. Exclusionary clauses are interpreted narrowly while coverage clauses are interpreted broadly to provide the greatest possible protection to the insured. Id. at 578-79.

The insured has a right to a defense whenever the allegations show a potential that liability will be established within the insurance coverage. Id. at 578. In this case, Plaintiffs provide insurance coverage for damages caused by an "occurrence." (Ex. 1-3 p. 24). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. 1-3 p. 39). The policy does not define "accident." "If definitions are not provided, nontechnical words are to be given a meaning consistent with

the sense in which they are used in ordinary speech . . . ." Harleysville Mut. Ins. Co. v. Packer, 60 F.3d 1116, 1121 (4th Cir. 1995) (internal quotations omitted). The North Carolina Supreme Court has consistently defined "accident" as "'an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty.'" Waste Mgmt. of Carolinas, Inc., 340 S.E.2d 374, 379 (N.C. 1986) (quoting Tayloe v. Indemnity Co., 127 S.E.2d 238, 239-40 (N.C. 1962)).

Here, Plaintiffs contend that no "occurrence" under the policy exists because the alleged injuries include "expected or intended injury" and were results of "dishonest or fraudulent acts," thus triggering the exclusions to bar coverage. Such conclusion is not supported by the language of the policies under North Carolina law.

The North Carolina Supreme Court has concluded that "where the term 'accident' is not specifically defined in an insurance policy, that term *does* include injury resulting from an intentional act, if the injury is not intentional or substantially certain to be the result of the intentional act." N.C. Farm Bureau Mut. Ins. Co. v. Stox, 412 S.E.2d 318, 325 (N.C. 1992). In the Stox case, the North Carolina Supreme Court rejected the insurance company's argument that Stox's injuries resulting from the intentional acts of the defendant Owens could not be covered as an "occurrence" or "accident" under the terms of the homeowner policy. Instead, the court ruled, "Competent evidence supported the trial court's finding in the case *sub judice* that the injury to Stox was an unintended injury resulting from Owens' intentional act. Therefore, the trial court correctly concluded from that finding that Owens' liability, if any, for that injury was covered under the policy as an 'occurrence' or 'accident.'" Id.

The Underlying Complaint contains a hybrid of allegations of both negligent and intentional conduct resulting in both intended and unintended injuries to the Underlying Plaintiffs. For example, Count Five alleges negligent infliction of emotional distress,[3] an injury that was not intentional or substantially certain to be the result of a defendant's intentional act, while Count Six asserts a claim for Intentional Infliction of Emotional Distress. (Doc. No. 10-1, p. 15). Plaintiffs argue that because the negligence allegations flow from intentional conduct, the complaint does not contain an "occurrence." (Doc. No. 29, p. 7). Specifically, Plaintiffs claim that the intentional infliction of emotional distress and negligent infliction of emotional distress claims are based on the same facts and note that recasting the same allegations of intentional conduct under a heading of negligence does not invoke coverage. See Kubit v. MAG Mut. Ins. Co., 708 S.E.2d 138, 148 (N.C. App. 2011); see also State Auto Ins. Companies v. McClamroch, 497 S.E.2d 439, 442 (N.C. App. 1998).

The North Carolina Court of Appeals has recognized that, in the context of determining insurance coverage, "an intent to injure 'may be inferred where the act is substantially certain to result in injury.'" Kubit, 708 S.E.2d at 148 (quoting McClamroch, 497 S.E.2d at 443). The facts alleged in the Underlying Complaint, however, contain important differences from the cases where North Carolina courts have found that claims labeled as "negligence" did not qualify as an "occurrence" because they were in fact "intentional." In Kubit, the insured was alleged to have formed a systematic and intentional course of conduct with the ultimate goal of removing a doctor from a hospital's medical staff. 708 S.E.2d at 148. Based on the alleged conduct, the

---

[3] To state a claim for negligent infliction of emotional distress, a plaintiff must allege that defendant negligently engaged in conduct that was reasonably foreseeable to cause plaintiff severe emotional distress, and the conduct did cause plaintiff to suffer such distress. Sorrells v. M.Y.B. Hospitality Ventures of Asheville, 435 S.E.2d 320, 321 (N.C. 1993).

7

court was able to infer that the insured party certainly intended to cause the emotional distress alleged in the complaint. Id. Citing another North Carolina Court of Appeals case, Kubit said:

> An intent to injure is the only logical conclusion to be inferred from defendants' conduct. The addition of the negligence claim is not sufficient to invoke coverage, because the amended complaint merely alleges but a different characterization of the same wilful act . . . . The [physician and his wife] have simply recast their allegations of intentional conduct under a heading of negligence. Accordingly, we hold that the intentional acts exclusion of the insurance contract applies . . . .

Kubit, 708 S.E.2d at 148 (quoting State Auto Insurance Cos. v. McClamroch, 497 S.E.2d 439, 443 (N.C. App. 1998)). The Kubit court then concluded that an "occurrence" was not alleged, holding "The injuries alleged in this case were substantially certain to result from the individual plaintiffs' intentional acts, and, therefore, the duty to defend was not triggered under the policies." 708 S.E.2d at 149 (citing Stox, 412 S.E.2d at 325) (holding that if intentional act is either intended to cause injury or "substantially certain" to result in injury, it is not an occurrence under policy, and there is no coverage)).

Here, no sure inference may be made in this case. For example, the allegations related to the negligent infliction of emotional distress claim do not conclusively show that the Underlying Defendants intended to cause injury to the specific victims in the Underlying Action. Indeed, the allegations mostly suggest the opposite – that the Underlying Defendants were attempting to keep their actions secret and hidden from the families and others. The allegations supporting the intentional infliction of emotional distress claim are cast differently, suggesting that the Underlying Defendants knowingly and with reckless disregard for others engaged in extreme and outrageous conduct. As a whole, the Court cannot conclude, as the Kubit court did, that the Underlying Defendants' conduct was substantially certain to cause the alleged injuries suffered by Underlying Plaintiffs.

Likewise, in Eubanks, the North Carolina Court of Appeals refused to distinguish between negligent and intentional emotional distress when the insured was alleged to hire a paid assassin to orchestrate murders. Eubanks v. State Farm Fire & Casualty Co., 485 S.E.2d 870, 872 (N.C. App. 1997). Because solicitation of murder is so nearly certain to result in emotional injury to the intended victim and spouse, intent may be inferred. Id. While the mere act of soliciting murder is likely to cause emotional injury, the actions of the insured in this case were only likely to cause emotional injury if the alleged victims learned of the scheme. Since there is no reason to suspect that the Underlying Defendants intended to be caught, the underlying complaint is not simply recasting intentional conduct as negligent conduct.

Here, the Underlying Complaint asserts multiple allegations of negligent conduct resulting in unexpected and unintended injuries, which constitute an "accident" and qualify as an "occurrence" under the policy terms. Accordingly, Plaintiffs owe a duty to defend in the Underlying Action.

Following a similar reasoning, this Court disagrees with Plaintiffs that all of the alleged conduct in the Underlying Complaint are broadly encompassed in the exclusion for damages "arising out of dishonest or fraudulent acts or omissions or willful violation of any statute, ordinance or regulation." North Carolina law states that this Court should strictly interpret the "arising out of" language since it appears in an exclusionary clause. See Durham City Bd. of Educ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 426 S.E.2d 451, 456 (N.C. App. 1993) (citing Herndon v. Barrett, 400 S.E.2d 767 (N.C. App. 1991)). As discussed above, the Underlying Complaint in this case alleges multiple injuries resulting from negligent supervision, negligent hiring, and other negligent conduct. The existence of other claims alleging fraudulent

conduct does not negate the other allegations of negligence. Accordingly, this exclusion clause does not excuse Plaintiffs' duty to defend.

Defendants' also argue that even if the policy exclusions applied, Plaintiffs should be estopped from denying their duty to defend at this late stage in the litigation. Because Plaintiffs are required to defend under the terms of the insurance policies, the issue of whether estoppel warrants a duty to defend is moot.

### B. Plaintiffs' Duty to Indemnify

While an insurer's duty to defend may be determined upon commencement of the underlying action, its duty to indemnify cannot be determined until the conclusion of the case if necessary facts remain in dispute. Harleysville, 692 S.E.2d at 611. ("[I]n determining whether an insurer has a duty to indemnify, the facts as determined at trial are compared to the language of the insurance policy."). As described previously, the Underlying Action includes four counts which, depending on resolution of the case on the merits, may be covered by the Defendants' insurance policies. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court "is authorized, in the sound exercise of its discretion, to stay or to dismiss" Plaintiff's request for a declaration on the duty to indemnify. Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) (affirming stay of federal coverage action during pendency of parallel state court proceedings as appropriate exercise of discretion under Declaratory Judgment Act). Where, as here, "an insurer comes to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured is pending in the state courts," the court's discretion should be guided by "considerations of federalism, efficiency, and comity . . . ." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994), abrogated on other grounds by Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257-58 (4th Cir. 1996).

The Court has considered the factors set forth in <u>Nautilus</u>, and finds that staying this case while the Underlying Action proceeds in state court proceeds would promote efficiency and avoid unnecessary entanglement between the state and federal courts. The Court denies Defendants' motion to the extent it requests dismissal without prejudice. Accordingly, the Court will stay the instant action pending resolution of the Underlying Action. The parties **SHALL provide a joint status update in this matter sixty (60) days** from the date of this Order and every thirty (30) days thereafter. The status update should update the Court as to when the parties anticipate resolution of the Underlying Action. It is this Court's hope that the Underlying Action will be promptly called for trial.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for partial judgment on the pleadings (Doc. No. 26) is GRANTED in part as to the duty to defend and DENIED without prejudice in part as to the duty to indemnify. Plaintiffs' motion for judgment on the pleadings (Doc. No. 28) is DENIED in part as to the duty to defend and DENIED without prejudice in part as to the duty to indemnify. Defendants' motion to stay is GRANTED, and all deadlines in this case are hereby STAYED.

IT IS ALSO ORDERED that the parties' consent motion for a status conference (Doc. No. 32) is DENIED.

IT IS SO ORDERED.

Signed: November 22, 2013

Frank D. Whitney
Chief United States District Judge

11